IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| DARRYL ANDERSON | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 16-5717 |
| CITY OF PHILADELPHIA, ET AL. | : | |

## MEMORANDUM

**SURRICK, J.**                                                    **FEBRUARY  9 , 2017**

      Presently before the Court is Defendants' Motion to Dismiss for Failure to State a Claim. (ECF No. 7.)  For the following reasons, Defendants' Motion will be granted.

## I.     BACKGROUND

      In his Complaint, Plaintiff Darryl Anderson, a former inmate of the Philadelphia Prison System, alleges, inter alia, that two correctional officers, Defendants Dominic Washington and Clifford Jeudy, committed an assault and battery on him, and subjected him to excessive force. Plaintiff asserts a number of federal and state law claims against the correctional officers, as well as against the City of Philadelphia; Louis Giorla, the former Commissioner of the Philadelphia Prison System; and John Delaney, the Warden of the City of Philadelphia's Detention Center.  In this Motion, the City, Delaney, and Giorla seek dismissal of the Section 1983 claims asserted against them in Count VI of Plaintiff's Complaint.[1]

---

[1] Defendants Washington and Jeudy did not seek to dismiss any of the claims.

### A.    Factual Background[2]

The Complaint alleges that on August 16, 2015, Correctional Officers Washington and Jeudy punched Plaintiff in the head and body, slammed him to the ground, and used pepper spray on him.  (Compl. ¶ 17, ECF No. 1.)  At the time, Plaintiff was an inmate at Philadelphia's Detention Center.  Plaintiff alleges that he "was in a nonthreatening and defenseless position," and "was unarmed and did not pose a threat to Defendants Washington and/or Jeudy."  (*Id.* ¶ 20.)  As a result of the actions of Washington and Jeudy, Plaintiff sustained physical injuries, suffered mental anguish, and incurred significant medical costs.  (*Id.* ¶¶ 32-33.)  The Complaint alleges that Defendants Washington and Jeudy falsely reported to the Philadelphia Police Department and to the District Attorney's Office that Plaintiff had assaulted them and had recklessly endangered them.  (*Id.* ¶ 23.)  As a result, Plaintiff was charged and criminally prosecuted.  Plaintiff was subsequently acquitted of the charges at trial.  (*Id.* ¶¶ 23-24.)

The Complaint further alleges that, following the incident, the matter was referred by Lieutenant Shalise Foreman, an investigator for the Philadelphia Prison System, to the Office of Professional Compliance, Internal Affairs Unit for review but nothing occurred after the referral was filed, and neither Washington nor Jeudy were disciplined.  (*Id.* ¶¶ 18, 19.)  Prior to the incident that gave rise to this suit, Washington had been suspended for three days without pay for injuring another inmate.  (*Id.* ¶ 16.)  It is alleged that "Defendant Washington attempted to cover up that incident by failing to report the incident to a supervisor."  (*Id.*)

### B.    Procedural History

On November 2, 2016, the Complaint was filed.  (Compl.)  The Complaint has six counts:  Count I - use of excessive force in violation of 42 U.S.C. § 1983 against Washington

---

[2] For the purpose of this Motion, the factual allegations in the Complaint are taken as true.  *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989).

and Jeudy; Count II - cruel and unusual punishment in violation of 42 U.S.C. § 1983 against

Washington and Jeudy; Count III - state-based claims of assault and battery against Washington

and Jeudy; Count IV - a state-based claim of false imprisonment against Washington and Jeudy;

Count V - a state-based claim of malicious prosecution against Washington and Jeudy; and

Count VI - violation of the Fourth, Fifth, Eighth, and Fourteenth Amendments under 42 U.S.C.

§ 1983 against the City of Philadelphia, Warden Delaney, and former Commissioner Giorla.  (*Id.*

¶¶ 38-65.)[3]

On December 23, 2016, the City, Delaney, and Giorla filed a Motion to Dismiss for

Failure to State a Claim.  (ECF No. 7.)  Plaintiff filed a Brief in Opposition to Defendants'

Motion to Dismiss on January 6, 2017.  (ECF No. 8.)  On January 9, 2017, Plaintiff filed an

Addendum to Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss.  (ECF No. 9)

On January 10, 2017, Defendants Washington and Jeudy filed an Answer to the Complaint.

(Answer, ECF No. 10.)

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief

must contain a short and plain statement of the claim showing that the pleader is entitled to

relief."  Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to

state a claim upon which relief can be granted.  A motion under Rule 12(b)(6), therefore, tests

the sufficiency of the complaint against the pleading requirements of Rule 8(a).  "To survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible "when the plaintiff pleads factual content that allows the court to

---

[3] Plaintiff mistakenly lists Count VI as Count IX.  (*See* Compl. ¶ 64.)

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Courts need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

In determining whether dismissal of the complaint is appropriate, courts use a two-part analysis. *Fowler*, 578 F.3d at 210. First, courts separate the factual and legal elements of the claim and accept all of the complaint's well-pleaded facts as true. *Id.* at 210-11. Next, courts determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). Given the nature of the two-part analysis, "'[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

## III.   DISCUSSION

The City, Delaney, and Giorla seek to dismiss Count VI, the only count asserted against them. Defendants argue that Plaintiff has failed to state a Section 1983 claim because Plaintiff has not alleged facts sufficient to support a finding:  (1) that Delaney and Giorla were personally

4

involved in the incident, or had actual knowledge and acquiesced in the conduct; or (2) that a policy or custom existed that led to past instances of misconduct.  Plaintiff responds that Delaney and Giorla were personally involved through their knowledge and acquiescence of the misconduct involving Washington and Jeudy and by their failure to take any action with regard to Washington's prior incident.  Plaintiff also contends that Delaney and Giorla failed to train, supervise, and discipline the corrections officers.  Plaintiff argues that Delaney and Giorla's inaction in their official capacities can be considered a policy or custom, which can be used to attach liability to the City.

Section 1983 states in relevant part that a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in an action at law."  42 U.S.C. § 1983.  A "person" includes local government units and municipalities.  *See Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690 (1978).  "A cause of action under Section 1983 requires only two allegations:  a person has deprived the plaintiff of a federal right, and that person acted under color of state or territorial law."  *Goldwire v. City of Phila.*, 130 F. Supp. 3d 936, 941 (E.D. Pa. 2015) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).

However, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).  Supervisors such as Delaney and Giorla may be liable in their individual capacities under two theories.[4]  Under the

---

[4] Plaintiff also asserts a Section 1983 claim against Defendants Giorla and Delaney in their official capacities.  (Compl. ¶¶ 10, 11.)  The United States Supreme Court has made clear that "[o]fficial-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Kentucky v. Graham*, 473 U.S. 159, 165

first theory, a supervisor can be liable if "he participated in violating their rights, . . . directed others to violate them, or . . . had knowledge of and acquiesced in his subordinates' violations." *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995) (citations omitted).  Under the second theory, a supervisor can be liable if he, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm."  *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)).

### A.    Section 1983 Claim Against Delaney and Giorla

#### 1.    Knowledge and Acquiescence[5]

For a supervisor to be liable through acquiescence, the supervisor must contemporaneously know of the violation of a plaintiff's rights and fail to take action.  *See Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir. 1997) ("Where a supervisor with

---

(1985) (internal quotation marks omitted).  Thus, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Id.* at 166 (citation omitted).  We will therefore treat the claims against Defendants Delaney and Giorla in their official capacities as against the City of Philadelphia.

[5] As discussed above, supervisors may be liable if they violate another's constitutional rights or direct others to do so.  Therefore, "there must be some affirmative conduct by the supervisor that played a role in" constitutional violations.  *Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990) (citation omitted).  "[A]ny claim that supervisors directed others to violate constitutional rights necessarily includes as an element an actual violation at the hands of subordinates.  In addition, a plaintiff must allege a causal connection between the supervisor's direction and that violation, or, in other words, proximate causation."  *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).  Plaintiff has not alleged any facts to suggest that Defendants Delaney or Giorla were present during the alleged misconduct, or participated in any way.  *See Mcgraw v. Wetzel*, No. 15-5987, 2016 WL 3538601, at *5 (E.D. Pa. June 29, 2016) (dismissing a Section 1983 claim against a supervisor, where no facts were alleged that he was personally involved or directed his subordinates to violate the plaintiffs' constitutional rights); *Karmo v. Borough of Darby*, No. 14-2797, 2014 WL 4763831, at *8 (E.D. Pa. Sept. 25, 2014) (same).  The crux of Plaintiff's allegations involves Defendant Delaney and Giorla's alleged acceptance of the incident.  (*See* Compl. ¶¶ 26, 28-29.)  We will therefore proceed under the theory of supervisory liability involving knowledge and acquiescence.

authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so, the factfinder may usually infer that the supervisor 'acquiesced' in (i.e., tacitly assented to or accepted) the subordinate's conduct."), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *see generally Andrews*, 895 F.2d at 1479.  Allegations of "actual knowledge and acquiescence . . . must be made with appropriate particularity."  *Rode*, 845 F.2d at 1207 (citations omitted).  Even "constructive knowledge by virtue of being the supervisor of subordinates who may have actual knowledge is not sufficient to support liability under § 1983."  *Regan v. Twp. of Lower Merion*, No. 98-2945, 1999 WL 999381, at *5 (E.D. Pa. Oct. 28, 1999) (citations omitted).

Plaintiff contends that he has adequately pled knowledge and acquiescence by Delaney and Giorla.  In his Complaint, Plaintiff alleges that Washington had been suspended for a similar incident with another inmate "where he left that inmate in the Sally Port bleeding."  (Compl. ¶ 16.)  Plaintiff also alleges that Washington's subsequent misconduct directed at Plaintiff was referred to Internal Affairs, and that nothing was done as a result.  (*Id.* ¶¶ 18, 19.)  Plaintiff argues that these facts shows that the supervisors Delaney and Giorla failed to act upon both Washington's known prior instance of misconduct, and Washington's misconduct giving rise to this action.  Plaintiff argues that this is sufficient to state a claim for supervisory liability. Plaintiff is simply wrong.  "Supervisory liability may be imposed only where there is:  (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate."  *Banks v. Rozum*, 639 F. App'x 778, 784 (3d Cir. 2016) (citing *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997)).

The Complaint does not allege facts showing that Delaney and Giorla had contemporaneous knowledge about the alleged assault of Plaintiff.  The acquiescence required to state a claim must derive from the supervisor's contemporaneous personal knowledge of the underlying offending incident, not his knowledge of the underlying incident after it occurred. *See, e.g.*, *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (upholding the dismissal of a Section 1983 claim against a policymaker, where no facts were pled that the defendant had "contemporaneous, personal knowledge" of the alleged underlying constitutional violations).  In addition, the fact that Washington was suspended without pay for three days for the prior incident does not show inaction on the part of Delaney or Giorla that would suggest a "message of approval" of the misconduct by the supervisors.  *Banks*, 639 F. App'x at 784.  The fact that Washington was suspended without pay for the prior incident shows just the opposite.  Plaintiff has failed to state a Section 1983 claim against Defendants Delaney and Giorla under a theory of knowledge and acquiescence.

### 2.    *Failure to Train, Supervise, and Discipline*

Municipal supervisors may be liable for the failure to train, supervise, or discipline its employees only where the failure amounts to a deliberate indifference.  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  *Thomas v. Cumberland Cty.*, 749 F.3d 217, 223 (3d Cir. 2014) (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 410 (1997)).  Failure to train, supervise, and discipline municipal employees "can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations."  *Berg v. Cty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000); *see also Owens v. Coleman*, 629 F. App'x 163, 167 (3d Cir. 2015) (citing *Connick*, 563 U.S. at 63)

("A pattern of similar constitutional violations is typically necessary to demonstrate deliberate indifference for purposes of failure to train.").[6]  A plaintiff must also identify specific training or policies that would prevent the harm.  *Woloszyn v. Cty. of Lawrence*, 396 F.3d 314, 325 (3d Cir. 2005).

Here, Plaintiff alleges that Defendants "fail[ed] to train correctional officers in proper methods, techniques, procedures and protocols for obtaining compliance restraining inmates in a manner utilizing only justified, reasonable, and necessary force," and that they "were deliberately indifferent to the need for more or different training, supervision, investigation or discipline" with respect to the use of force, exercising police powers, and managing correctional officers with emotional or psychological problems.  (Compl. ¶¶ 27, 30, 31.)  These allegations are not sufficient.  Notably, Plaintiff fails to allege a pattern of prior incidents of conduct. Simply alleging that correctional officer Washington had previously on one occasion been suspended for misconduct is not enough.  *See Wood v. Williams*, 568 F. App'x 100, 105-06 (3d Cir. 2014) (upholding dismissal of failure to train claim when complaint included only one prior incident of potentially unconstitutional conduct) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985)); *Nace v. Pennridge Sch. Dist.*, 185 F. Supp. 3d 564, 577 (E.D. Pa. 2016) ("One incident does not constitute a 'pattern of violations.'").  Plaintiff has failed to state a claim

_____

[6] A single violation of a constitutional right may suffice to demonstrate deliberate indifference, but only in "a narrow range of circumstances" and if it is a "highly predictable consequence" of a supervisor's decision not to train.  *Connick*, 563 U.S. at 64.  The lack of facts in Plaintiff's Complaint prevents us from inferring that a failure to train would obviously lead to Plaintiff's alleged injuries.  *See Doneker v. Cty. of Bucks*, No. 13-1534, 2013 WL 4511630, at *6 n.4 (E.D. Pa. Aug. 26, 2013) (finding that the plaintiff failed to allege a failure to train claim based on a single incident of excessive force, as it was not alleged how such an incident was "obviously" the result of a failure to train).  Regardless, it appears that Plaintiff has chosen to pursue his claims under a pattern theory given his focus on an alleged history of similar misconduct involving Washington.

against Defendants under a theory of failure to train, supervise, or discipline.  Count VI against Defendants Delaney and Giorla will be dismissed.

B.      **Section 1983 Claim Against the City of Philadelphia**

Like municipal supervisors, a municipality "may not be held liable under Section 1983 through the *respondeat superior* doctrine."  *Andrews*, 895 F.2d at 1480.  However, a municipality may be liable if the execution of its policy or custom causes a plaintiff's injury. *Monell*, 436 U.S. at 694.  A policy exists when a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict."  *Andrews*, 895 F.2d at 1480 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)).  A custom exists when a "persistent and widespread" practice of government officials is so "permanent and well settled as to constitute a custom or usage with the force of law."  *Monell*, 436 U.S. at 690.  A policy and a custom may come in the form of long-standing acquiescence. *See Simmons v. City of Phila.*, 947 F.2d 1042, 1064 (3d Cir. 1991).  Nevertheless, "it is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom."  *Andrews*, 895 F.2d at 1480.

Plaintiff makes the same allegations against the City as he does against Delaney and Giorla.  Plaintiff alleges that it was the policy, practice, and/or custom of the City "to condone the use of unjustified, unreasonable, unnecessary, malicious, sadistic, willful and excessive force," and that the City was "deliberately indifferent to the need for more or different training, supervision, investigation or discipline . . . ."  (Compl. ¶¶ 26, 31.)  These bald allegations fail to state a claim.  They are simply threadbare recitals of the elements needed for a *Monell* claim. *See Wood*, 568 F. App'x at 104 (affirming dismissal of *Monell* claim because the complaint

merely repeated the necessary elements and contained no factual support as to a policy, custom, or policymaker responsible for the alleged constitutional violation).

There are no facts alleged to suggest that Defendant policymakers Delaney and Giorla knew of the alleged misconduct.  "[A] plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom."  *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990).  Without adequately pleading a policymaker's contemporaneous knowledge of the underlying misconduct, Plaintiff cannot sufficiently state that there was a policy or custom.  *See, e.g.*, *McTernan*, 564 F.3d at 659 (affirming dismissal of a *Monell* claim because the plaintiff failed to plead that a policymaker knew of the alleged unconstitutional conduct, and stating that "[c]ustom requires proof of knowledge and acquiescence by the decisionmaker"); *Robinson v. City of Phila.*, No. 15-1574, 2015 WL 5965003, at *8 (E.D. Pa. Oct. 13, 2015) (dismissing a *Monell* claim in part because the plaintiff failed to plead how the defendant policymakers knew of the alleged unconstitutional conduct); *Washington v. City of Phila.*, No. 11-3275, 2012 WL 85480, at *8 (E.D. Pa. Jan. 11, 2012) (same).

As for the "failure to" claims, Plaintiff failed to plead a pattern of unconstitutional behavior.[7]  Without a pattern, Plaintiff cannot adequately state that a policy or custom exists. *See Williams v. Borough of Sharon Hill*, No. 12-5395, 2013 WL 4743471, at *4 (E.D. Pa. Sept. 4, 2013) (dismissing a *Monell* claim under a theory of failure to train because the plaintiff failed to plead a prior pattern of similar misconduct).  Even if we took Washington's past incident of misconduct into consideration, "two instances of inappropriate conduct do not establish a custom under *Monell*."  *Peters v. Cmty. Educ. Centers, Inc.*, No. 11-850, 2014 WL 981557, at *7 (E.D.

---

[7] As discussed above, Plaintiff has failed to plead how his "failure to" claims fit under a single-violation theory.  The facts are not sufficient for us to determine that a lack of training, supervision, or discipline would obviously have led to the alleged unconstitutional conduct.

Pa. Mar. 13, 2014) (citations omitted); *but see Boyden v. Twp. of Upper Darby*, 5 F. Supp. 3d 731, 743 (E.D. Pa. 2014) (finding that the plaintiff sufficiently stated a custom where he alleged that two other police officers were fired for excessive force, he cited to two cases in which police officers were sued for excessive force, and he alleged that the defendant police officer at issue participated in the beating of another man). Accordingly, Count VI against Defendant City of Philadelphia will be dismissed.

### C.      Amending the Complaint

Plaintiff requests permission to amend his Complaint in the event that the Court determines that the claims asserted against the City, Delaney and Giorla are not sufficient. (Resp. to Mot. to Dismiss 8.) Plaintiff claims to possess an investigation report, a memorandum written by a board that oversees disciplinary hearings, and a notice of suspension involving Washington's prior incident of misconduct. (*Id.* at 9-10.) The report was signed by Delaney, while the memorandum and notice of suspension were signed by Giorla. (*Id.* at 10.) In addition, Plaintiff claims to possess Lieutenant Foreman's investigation report concerning the present matter, which was signed by Delaney. (*Id.*)

Courts should freely grant leave to amend a complaint when justice so requires, as long as it would not "be inequitable or futile." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citation omitted). Given that "[t]he Federal Rules of Civil Procedure allow for the liberal amendment of pleadings," *Langbord v. United States Dep't of Treasury*, 832 F.3d 170, 188 (3d Cir. 2016), we will permit Plaintiff to amend his Complaint. Plaintiff should be provided an opportunity to use the documents in support of his claims against Delaney, Giorla, or the City.

We cannot state with confidence that amending the Complaint would be futile without full

knowledge of contents of the documents.

**IV.     CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Complaint will be

granted, and Plaintiff will be granted leave to amend the Complaint.

An appropriate Order follows.

**BY THE COURT:**

_____

**R. BARCLAY SURRICK, J.**

13